Samuel T. DEGGINS and Keith
A. Manson, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–634C.

United States Court of Federal Claims.

Nov. 24, 1997.

Samuel T. Deggins, Ft. Leavenworth, KS, pro se, and Keith A. Manson, Fernandina Beach, FL, pro se.

Katherine M. Kelly, Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director, Washington, DC, for defendant.

OPINION

BRUGGINK, District Judge.

In this military-allowance case, plaintiffs claim entitlement under 37 U.S.C. § 403a(a)(2) (1994) to a variable housing allowance (VHA) at a rate based on the location of their dependents. The case is before the court on defendant's motion to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction or, in the alternative, for summary judgment. For the reasons set forth below, the court dismisses the case for lack of subject-matter jurisdiction.

BACKGROUND

The facts in this case are not in dispute. Plaintiff Samuel T. Deggins was a lieutenant colonel in the U.S. Army, stationed in Hawaii. In January 1992 Deggins pled guilty to the following offenses: committing an indecent act upon his daughter, a child under the age of sixteen years; sodomy; and false swearing. The General Court Martial sentenced Deggins to confinement for fifteen years, forfeiture of $3,000 in pay per month for 180 months, and dismissal from service. The General Court–Martial Convening Authority reduced Deggins's confinement to twelve years, suspended the part of the sentence adjudging forfeiture of pay, and approved dismissal from the service. In June 1994 the U.S. Army Court of Military Review affirmed the sentence, and in January 1995 the U.S. Court of Appeals for the Armed Forces denied Deggins's petition for a grant of review. The sentence did not include forfeiture of allowances.

In August 1992 the Army transferred Deggins to the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas, where he is presently located, serving his sentence. From the beginning of his incarceration until his dismissal from the Army in May 1995, Deggins sent all of his pay and allowances to his family in California. After Deggins's transfer to USDB, however, the Army started withholding VHA payments from his pay and allowances. Deggins seeks $5,922.51 as back pay in the form of VHA.

Plaintiff Keith A. Manson was a lieutenant in the Judge Advocate General's Corps of the U.S. Naval Reserve, stationed in Georgia. In June 1993 Manson was convicted of the following offenses: failure to obey a lawful order or regulation by using his official position as a legal-assistance attorney to improperly induce a client to provide a benefit to him by engaging in sexual intercourse and sodomy with him; oral sodomy with a client; conduct unbecoming an officer and a gentleman by wrongfully engaging in a sexual intercourse with a client on the military judge's bench in the courtroom; and adultery with a client. The General Court–Martial Convening Authority approved Manson's sentence of confinement for ten months and dismissal from the service, while suspending an additional five months of confinement for a period of two years. Manson's sentence did not include forfeiture of any pay or allowances.

From June 1993 until February 1994, Manson was confined at the USDB in Fort Leavenworth, Kansas. After confinement, Manson was in an appellate-leave status pending his discharge. In November 1994 Manson was recalled to active duty for a hearing to vacate the suspended portion of his confinement sentence based on a charge of conduct unbecoming an officer and a gentleman. After the suspended portion of Manson's sentence was revoked, Manson spent the remaining five months of his sentence, from January 1995 to May 1995, in confinement at the USDB. During both of Manson's confinements at the USDB, the USDB officials in charge of disbursement denied him a payment of VHA. Manson's dependents were located in Atlanta, Georgia. Manson seeks $1,419.93 of VHA back pay.

DISCUSSION

■ The Tucker Act limits jurisdiction in this court to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994). The Supreme Court in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), concluded that the Tucker Act "does not create any substantive right enforceable against the United States for money damages." *Id.* at 398, 96 S.Ct. at 953. Hence, in order to bring a suit in this court, a plaintiff has to assert a substantive right found in the Constitution, in an act of Congress, or in any regulation of an executive department. *See United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983). Only a provision of the Constitution, statute, or regulation that can "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained" provides a substantive right actionable in this court. *Testan*, 424 U.S. at 400,

96 S.Ct. at 954 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)).

Plaintiffs claim that they are entitled to VHA under 37 U.S.C. § 403a(a)(2). Plaintiffs also claim that the denial of VHA payments upon their incarceration violates the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution and constitutes an illegal punishment in violation of the Eight Amendment of the Constitution. Section 403a(a)(1) establishes entitlement to VHA and provides in part:

> Except as provided in subsection (b), a member of a uniformed service entitled to basic allowance for quarters is entitled to a variable housing allowance under this section whenever assigned to duty in an area of the United States which is a high housing cost area with respect to that member.

37 U.S.C. § 403a(a)(1) (1994). This section mandates payment of VHA, based on a service member's location, to every member who is entitled to basic allowance for quarters (BAQ)[1] and who is assigned to duty in a high housing cost area.

The plaintiffs, however, did not base their claim on section 403a(a)(1). Rather, the plaintiffs claim entitlement to VHA based on their dependents' location under section 403a(a)(2). While the statute mandates VHA payments based on a service member's location, it only provides an opportunity to receive VHA payments based on the location of one's dependents if the Secretary concerned determines that it would be inequitable not to do so:

> In the case of a member with dependents—
>
> (A) who is assigned to duty inside the United States the location or the circumstances of which make it necessary that his dependents reside at another location; and
>
> (B) whose dependents reside in an area of the United States where, if the member

were assigned to duty in that area, the member would be entitled to receive a variable housing allowance at a rate other than the rate to which the member is entitled (if at all) in the area of his duty assignment,

> the member *may* be paid a variable housing allowance as if he were assigned to duty in the area in which his dependents reside if the Secretary concerned determines (under regulations prescribed under subsection (e) of this section) that it would be inequitable to base the member's entitlement to, and amount of, variable housing allowance on the area to which the member is assigned.

37 U.S.C. § 403a(a)(2) (1994) (emphasis added). Whether or not a service member receives a VHA payment based on the location of his dependents, rather than the location of his duty assignment, is thus left within the discretion of the Secretary.

With respect to the Army,[2] statutory VHA provisions are implemented by the Joint Federal Travel Regulations (JFTR).[3] *See* JFTR U8005.B.2.a (Sept. 1, 1995). The applicable section of the JFTR specifies that:

> A member assigned to a PDS [Permanent Duty Station] in the United States is entitled to VHA at the rate applicable to the location where the dependents maintain a permanent residence in the United States *if* the Secretary concerned, or the Secretary's designated representative, issues a determination it [sic] is necessary for the dependents to maintain a permanent residence in a military housing area other than the one in which the PDS is located.

*Id.* (emphasis added). After stating six situations in which a necessary determination might be issued, none of which apply to plaintiffs' circumstances, the regulations provide a catch-all provision:

> In addition to these cases, the Secretary concerned or the Secretary's designated

---

1. 37 U.S.C. § 403(a) provides in part: "a member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for quarters . . . according to the pay grade in which he is assigned or distributed for basic pay purposes."

2. *See* Army Reg. 37-104-4, ¶ 14-1 (Sept. 30, 1994) (referring to the Joint Federal Travel Regulations for determination of VHA entitlement).

3. This regulation is promulgated by the Department of Defense.

representative, *may* issue a determination if circumstances or conditions at the new PDS require the dependents to reside at a separate location. This determination is made only in cases where the necessity to reside separately is caused by conditions at the duty station. This doesn't cover a personal election of either a member or dependents as the reason for residing separately.

*Id.* (emphasis added).

Comparable regulations applicable to Navy personnel allow "payment of VHA based on location of dependents when military necessity causes the service member and dependents to maintain separate residences." SECNAV Instruction 7220.82, ¶ 2 (July 31, 1987). Like the JFTR, Navy regulations list six situations that allow payment of VHA based on dependents' location, none of which apply to this case, and then provide a catch-all category:

> Determinations to pay VHA based on dependent location *may* be appropriate in circumstances other than those in paragraph 4b. These determinations will be made only in cases when the necessity to reside separately is caused by conditions at the duty station and paying VHA based on the service member's permanent duty station would be inequitable.

*Id.* at ¶ 4.c (emphasis added).

It is plain, therefore, that both the statute and the applicable regulations leave an award of VHA under the plaintiffs' circumstances to the discretion of the Secretary. It is undisputed that the Secretary never exercised that discretion to grant VHA to plaintiffs.

■ While generally "claims for military pay and allowances are actionable under the Tucker Act," *Heisig v. United States,* 719 F.2d 1153, 1155 (Fed.Cir.1983), the claim for military pay and allowances based on a statute that provides only for a discretionary payment of money is fatally flawed. In *Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318 (1981), the court held that 37 U.S.C. § 313 (1976),[4] providing special pay for medical officers, was not money mandating and the court had no jurisdiction over the

claim. *See id.* at 352, 648 F.2d 1318. The court interpreted the language of section 313 providing that a medical officer "*may* ... be paid an amount not to exceed $13,500 for each year of the active duty agreement," 37 U.S.C. § 313(a)(6) (emphasis added), as only a discretionary provision and not a money mandating one. *Id.* at 352, 648 F.2d 1318. Similarly, in *Huston v. United States,* the Federal Circuit held that 5 U.S.C. § 5333(b) (1988) was not money mandating and that the U.S. Claims Court properly dismissed the suit for want of subject-matter jurisdiction. *See* 956 F.2d 259, 261–62 (Fed.Cir. 1992). Section 5333(b) provided that "an employee in a position to which this subchapter applies ... *may* be paid at one of the rates for his grade...." 5 U.S.C. § 5333(b) (1988) (emphasis added). The court concluded that section 5333(b) did not mandate payment of money because the word "may" indicated discretion rather than a requirement. *See Huston,* 956 F.2d at 262. In concluding that section 5333(b) was not money mandating, the court in *Huston* contrasted it with another section of the same statute, section 5333(a), containing mandatory language. *See id.*

■ Hence, when a plaintiff brings suit under a non-money-mandating provision of a statute, the court lacks subject-matter jurisdiction even though some other provision of the same statute is money mandating. *See id.; Deshauteurs v. United States,* 39 Fed.Cl. 263, 266–268 (1997) (holding that, notwithstanding the money-mandating nature of other sections of the statute, 37 U.S.C. § 204(i)(2) (1994) was not money mandating because the statutory language provided that disability pay "may" be extended beyond the six-month statutory limit "if the Secretary determines that it is in the interests of fairness and equity to do so").

■ In the case at bar, even though the statute arguably mandates VHA payment based on a service member's location, neither the statute nor the implementing regulations contains money-mandating language requiring the government to pay VHA to

---

4. 37 U.S.C. § 313 was repealed effective Sept. 15, 1981.

plaintiffs based on their dependents' location. Hence, the court lacks subject-matter jurisdiction to decide the merits of their claim. It is therefore unnecessary to reach defendant's alternative arguments that incarceration of a service member does not constitute an "assignment to duty" within the meaning of section 403a and that an inmate is not entitled to VHA based on the location of his incarceration.

■ As for plaintiffs' constitutional claims, the Double Jeopardy Clause of the Fifth Amendment and the prohibition of a cruel and unusual punishment in the Eight Amendment do not mandate the payment of money damages. *See Calhoun v. United States*, 32 Fed.Cl. 400, 405 (1994) (noting that nothing in the Eight Amendment creates a cause of action for money damages); *Bowman v. United States*, 35 Fed.Cl. 397, 400 (1996) (stating that only an illegal exaction claim may provide jurisdiction in this court under the Double Jeopardy Clause).

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction.